IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| HARTFORD CASUALTY INSURANCE COMPANY<br>One Hartford Plaza<br>Hartford, Connecticut 06155<br><br>　　　　Plaintiff,<br>v.<br><br>SATORY GLOBAL LLC<br>601 Pennsylvania Avenue NW<br>Suite 900 – South Building<br>Washington, D.C. 20004; and<br><br>TROY R. MAXON<br>743 Southeast Forest Run<br>Estacaba, Oregon 97023,<br><br>　　　　Defendants. | Civil No. 13-419 |

## COMPLAINT

Hartford Casualty Insurance Company files this complaint for declaratory relief and states as follows:

### PARTIES

1. Plaintiff Hartford Casualty Insurance Company ("Hartford") is an Indiana corporation with its principal place of business in Hartford, Connecticut. It is therefore a citizen of Indiana and Connecticut.

2. Defendant Satory Global LLC ("Satory") is a Virginia limited liability company whose members are natural persons who are citizens of Virginia and Maryland. Satory is therefore a citizen of Virginia and Maryland. Satory is a defendant in *United States ex rel. Hood v. Satory Global, Inc. [Satory Global, LLC]*, D.D.C. Civ. No. 11-774 (RMC) ("*Qui Tam* Action"), pending in this Court.

3. Defendant Troy R. Maxon ("Maxon") is a natural person who is a citizen of Oregon. Maxon is a plaintiff in the *Qui Tam* Action.

4. William Robin Hood ("Hood") is a deceased natural person who was a citizen of the District of Columbia. On information and belief, Hood, who was a plaintiff in the *Qui Tam* Action, died in March 2013. To date, no Fed. R. Civ. P. 25(a) suggestion of death or motion for substitution has been filed in the *Qui Tam* Action. Hartford intends, if and when Rule 25(a)(1) substitution occurs in the *Qui Tam* Action, to amend this complaint to name Hood's successor or representative as a Defendant in this action, should it be contended that Hood's successor or representative is a necessary party in this action.

## JURISDICTION

5. This complaint seeks a declaration that no coverage exists under insurance policies, with an applicable limit of $500,000, for an underlying lawsuit seeking in excess of $500,000 in damages.

6. Diversity of citizenship exists between Plaintiff, which is a citizen of Indiana and Connecticut, and Defendants, who are citizens of Maryland, Virginia, and Oregon.

7. Pursuant to 28 U.S.C. § 1332, this Court has diversity jurisdiction over this action between citizens of different states in which the amount in controversy is in excess of $75,000, exclusive of interest and costs.

8. The Court has personal jurisdiction over Satory, who is subject to service of process within 100 miles of the Court, and over Maxon, who voluntarily submitted to the jurisdiction of this Court by filing the *Qui Tam* Action against Satory in this Court.

9. Venue is proper under 28 U.S.C. § 1391(b)(2) because the insurance dispute giving rise to this claim involves District of Columbia insurance contracts.

## FACTS

### The Policies

10. Hartford issued to Satory consecutive insurance policies in effect from June 1, 2010, to April 13, 2011; April 13, 2011, to April 13, 2012; and April 13, 2012, to April 13, 2013 (the "Policies").

11. The Policies each incorporate the same Employment Practices Liability Coverage Form numbered SS 09 01 10 08 ("EPL Form"). The Insuring Agreement of the EPL Form provides in relevant part:

> A. We will pay on behalf of the "insured" all "damages" and "claim expenses" which the "insured" becomes legally obligated to pay as a result of a "wrongful act" alleged in any "claim", if the "claim" is first made against the "insured" during the "policy period" … and reported to us as soon as practicable but in no event later than sixty (60) days after the end of the "policy period"….
>
> E. This Coverage Part applies only if on or before the effective date of this coverage, the "insured" had no knowledge of any circumstances involving any actual or alleged error, misstatement, misleading statement, act, omission, neglect or breach of duty, which could reasonably be expected to result in a "claim" made against you, any "insured" or any "subsidiary" under this Coverage Part.

12. Section IV of the EPL Form provides:

> If during the "policy period" … any "insured" first becomes aware of a specific "wrongful act", and if the "insured" during the "policy period" … gives written notice to us of the:
>
> A. Specific "wrongful act";
>
> B. "Damages" which have or may result from such "wrongful act"; and
>
> C. Circumstances by which the "insured" first became aware of such "wrongful act",
>
> then any "claim" made subsequently arising out of such "wrongful act" shall be deemed for the purposes of this insurance to have been made on the date on which written notice was given to us.

13. Section VIII of the EPL Form specifies the insured's duties in the event of claim. In relevant part, this section provides:

> As a condition precedent to any coverage provided by this insurance and any obligations of ours under this coverage form, the "insured" must comply with each of the following duties in the event of a "claim".
>
> As a condition precedent to any coverage provided by this insurance and any obligations of ours under this coverage form, the "insured" must comply with each of the following duties in the event of a "claim".
>
> **A. Notice of "Claim"**
> (1) The "insured" shall provide us with written notice of any "claim" as soon as practicable, but in no event later than 60 days after the end of the "policy period" …
> (2) The "insured" must include with any notice of "claim" a description of the "claim", the nature of the alleged "wrongful act", a summary of the facts upon which the "claim" is based, the nature of the alleged damage, the names of the claimants, the names of the "insureds" against whom the "claim" has been made, the manner in which the "insured" first became aware of the "claim" and any documents received directly by the "insured" or by the "insured's" representatives in connection with the making and handling of the "claim", such as any letters, demands, or summonses.
>
> **B. Assistance and Cooperation of the Insured**
> (1) The "insured" shall fully assist and cooperate with us in the investigation, settlement and defense of all "claims" and upon our request shall authorize the release of records and other information, secure and give evidence, attend hearing and trials and obtain the location of and cooperation of witnesses.
> (2) The "insured" shall not, except at the "insured's" own cost, voluntarily make any payment, assume any obligation, incur any expenses, or admit any liability in connection with any "claim", incur any "claim expenses", or settle any "claim" without our written consent. The "insured" further agrees not to take any action which may increase our exposure under this coverage form.

### The Employment Claims

14. Satory employed Maxon and Hood to work on a government contract at the United States Department of Justice ("DOJ").

15. On March 8, 2011, Maxon resigned from his employment with Satory.

16. On March 17, 2011, Hood's employment with Satory was terminated.

17. On March 22, 2011, Satory sent a letter to Hood that stated:

Thank you for your e-mail of Thursday evening, March 17, 2011. The subject line of your e-mail is "Severance Package" and, in it, *you make a number of accusations regarding your employment with Satory Global*. For now, I think it sufficient to note that your characterizations are inaccurate, In fact, and as you know, *when you previously raised various concerns with Satory Global, we took them seriously, investigated them, and ultimately found them to be without basis*. (Emphasis added.)

18. On March 25, 2011, Satory called Hartford to verbally report a potential claim by Hood, but not by Maxon. Hartford's notes summarize the conversation as follows:

The individual that was terminated respon[d]ed with a bunch of claims that were inaccurate. the insured will provide details later. The insured has been advised that the ex-employee has sought legal coun[se]l with an unknown party. The ex-employee was asking for a severance package that was consid[e]red very unreasonable by the insured.

19. Five days later, on March 30, 2011, Hartford sent a letter to Satory advising: "Unfortunately, this telephone notice is insufficient under the Policy but that is easily remedied." Quoting section IV of the EPL Form, Hartford further advised: "In order for [Hartford] to accept notice of circumstance that reasonably could give rise to a 'claim' under the Policy, please provide a written narrative (with particular attention to the above items and to time lines) describing the matter. After receiving that information, [Hartford] will be in a better position to respond to the purported notice." Hartford did not receive any response to this correspondence.

20. On April 8, 2011, Satory sent a letter to Maxon stating that "[u]nfortunately, the process of ending your employment relationship with Satory Global has been going less than smoothly," and requesting that Maxon reimburse relocation fees paid by Satory and return Satory and client property

21.     On June 29, 2011, Satory, through counsel Raymond C. Baldwin at Seyfarth Shaw LLP, sent another letter to Maxon reiterating the request for reimbursement stated in its April 8, 2011 letter.

22.     On August 15, 2011, Satory, again through Mr. Baldwin at Seyfarth Shaw LLP, sent a third letter to Maxon.  In pertinent part, the letter stated:

> In response to my previous letter, *you now claim, for the first time, that your resignation of employment was somehow forced*. This is patently untrue …. Finally, you make an unfounded accusation that Satory Global engaged in unidentified inappropriate business activities.  This allegation is false and should be immediately withdrawn.  Satory Global has conducted an internal investigation and found that no such activities have taken place. (Emphasis added)

23.     On April 22, 2011, approximately one month after leaving their employment with Satory, Hood and Maxon filed the *Qui Tam* Action against Satory under seal in this Court.  The *Qui Tam* Action alleges that Satory worked on a government contract at the DOJ and presented false claims and false statements for payment or approval by the DOJ.  The *Qui Tam* Action also contains counts for Retaliation, Wrongful Termination and Breach of Employment Contract, as related to alleged actions taken by Satory against Hood and Maxon.

24.     Over one year later, on August 1, 2012, the Office of the Inspector General at the DOJ issued a subpoena duces tecum to Satory to investigate the allegations of the *Qui Tam* Action.

25.     Satory responded to the subpoena on August 28, 2012.

26.     On October 19, 2012, this Court unsealed the pending *Qui Tam* Action.

27.     Maxon and Hood attempted to serve process on Satory on January 9, 2013, and Satory notified Hartford regarding the *Qui Tam* Action shortly thereafter.

28.     Satory's January 2013 notice was the first communication that Hartford received from Satory since March 25, 2011.

## COUNT I- Declaratory Relief

29. Hartford incorporates by reference all preceding allegations of this pleading.

30. Under the policy language quoted herein, the Policies do not cover the *Qui Tam* Action.

31. Satory has requested that Hartford defend and indemnify it with respect to the *Qui Tam* action.

32. An actual and justiciable controversy exists between Satory and Hartford as to coverage under the Policies for the *Qui Tam* Action. Hartford joins Maxon as a Defendant to the extent he may contend he is a necessary party to that controversy under Fed. R. Civ. P. 19.

WHEREFORE, Hartford respectfully requests that the Court enter judgment: (1) declaring that Hartford has no defense or indemnity obligation with respect to the *Qui Tam* Action; and (2) granting such other and further relief as justice may require.

Respectfully submitted:

/s/ *Steven M. Klepper*
Steven M. Klepper, #501899
Beth Patricia Evans, #MD29903
KRAMON & GRAHAM, P.A.
One South Street, Suite 2600
Baltimore, Maryland 21202-3201
Telephone: (410) 752-6030
Facsimile: (410) 539-1269
Email: sklepper@kg-law.com
bevans@kg-law.com

*Attorneys for Plaintiff Hartford Casualty Insurance Company*

Dated: April 2, 2013